IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEREK BLOCK,                    :      CASE NO.: 20cv-3686
     *et al.*,

                                 :      JUDGE MORRISON
                 *Plaintiffs*,

                                 :      MAGISTRATE VASCURA
     v.
                                 :

JIM CANEPA, SUPERINTENDENT
OF LIQUOR CONTROL,         :
     *et al.*,

                                 :
                 *Defendants.*

## OPINION AND ORDER

Remaining Plaintiffs, an individual wine enthusiast and an Illinois wine store, challenge the constitutionality of Ohio's prohibition against out-of-state wine shipments to Ohio's residents and of Ohio's limitation on the amount of wine Ohio residents can transport into the state from a foreign jurisdiction.[1] Defendants move to dismiss and the motion is ripe. (ECF Nos. 19, 20, 22.) Pursuant to the reasoning that follows, the Court **DENIES** the motion.

## I.  BACKGROUND

The following material information is taken from Plaintiffs' Complaint, which the Court accepts as true for purposes of addressing the instant motion.

---

[1] Plaintiff Derek Block dismissed all of his claims against Defendants on February 3, 2021. (ECF No. 30.)

Plaintiff Kenneth Miller is an Ohio resident and wine collector. Plaintiff House of Glunz, Inc. is an Illinois corporation that markets, sells and ships wine at retail to consumers.

Defendant Jim Canepa is the Superintendent of the Ohio Division of Liquor Control. Defendant Dave Yost is the Attorney General of Ohio. Defendant Thomas Strickrath is the Director of the Ohio Department of Public Safety. Defendant Deborah Pryce is Chairperson of the Ohio Liquor Control Commission. Each is sued in their official capacity and is alleged to have acted at all relevant times under color of law.

Ohio's liquor laws create a three-tier distribution system. Under this system, the wine manufacturer or importer (first tier) sells wine to a wholesale distributor (second tier) who then resells to a retailer (third tier). (ECF No. 19 at 14-15.) A retailer then sells wine to consumers. *Id*. The manufacturer, distributor, and retailer must each obtain proper permits from the State.

Miller wants to buy wine directly from retailers outside of Ohio that offer wine not available to him in Ohio for shipment to his home but Ohio prohibits such shipments. R.C. § § 4301.58(B), 4301.60, and 4303.25. He has not attempted to complete such a purchase. Miller wants the opportunity to make such purchases. Miller also travels to other states to buy wine. He wants to be able to transport more than the maximum 4.5 liters Ohio law allows into Ohio from other states but he has not attempted to do so. R.C. § 4301.20.

House of Glunz has no physical location in Ohio and no intention of opening one here. House of Glunz does not have a permit from the Department of Liquor Control that would allow it to ship wine directly to Ohio residents. It has not applied for any permit that might allow it to do so. House of Glunz has customers who want it to ship wine to Ohio. House of Glunz has not attempted to complete such sales because Ohio law prevents House of Glunz from doing so without a permit or physical Ohio presence. It has therefore lost business. House of Glunz does not allege "any actual or planned attempt to have an Ohio resident transport more than" the limit into Ohio. (ECF Nos. 1 and 19 at 22.)

Plaintiffs use 42 U.S.C. § 1983 to challenge Ohio's direct-ship prohibition and transport limitation.[2] They highlight the ability of Ohio retailers to ship wine to non-residents and the lack of quantity restriction on consumers transporting wine within the state to argue that those laws violate the dormant Commerce Clause. They seek a declaratory judgment that the laws are unconstitutional and an injunction "barring the [D]efendants from enforcing them and requiring the defendants to permit the shipping and transportation of wine from out-of-state retailers to Ohio consumers." (ECF No. 20 at 2.) They further request costs and expenses, including attorney's fees.

---

[2] The Court interprets the Complaint's reference to "some retailers" in ¶ 30 to refer to House of Glunz. (ECF No. 1.) This means that House of Glunz is likewise asserting the transport claim. Plaintiffs shall file a clarification within seven days of this Opinion & Order if this is incorrect.

Defendants move to dismiss arguing that Plaintiffs lack standing. Alternatively, they argue that three of the four Defendants are immune from suit under the Eleventh Amendment and that the Plaintiffs fail to state a claim upon which relief may be granted. Plaintiffs oppose. Intervenor Defendant Wholesale Beer & Wine Association of Ohio ("Wholesale") also responded (ECF No. 21), urging the Court to refrain from addressing a proper remedy while not opposing the motion to dismiss. Being fully advised, the Court addresses the arguments in order.

## II.  STANDING

Defendants first argue that each Plaintiff lacks standing to pursue their claims in this Court such that full dismissal is proper. "The threshold question in every federal case is whether the court has the judicial power to entertain the suit." *National Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citation omitted). Hence, the Court begins with summarizing the standard of review for addressing motions to dismiss for lack of standing before turning to the substance of Defendants' standing arguments.

### A. Standard of Review

Federal R. Civ. P. 12(b)(1) applies to Defendants' motion as to standing.  *See Crawford v. United States Dep't of the Treasury*, No. 3:15-CV-00250, 2016 U.S. Dist. LEXIS 55395, at *18, 117 A.F.T.R.2d (RIA) 2016-1400 (S.D. Ohio Apr. 25, 2016) (Rose, J.). That rule allows a defendant to file a motion to dismiss based on a "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged.

4

*Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 666-67 (S.D. Ohio 2019)(Marbley, J.)(citation omitted).

The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017). Only the former is present here. *Mosley v. Kohl's Dep't Stores, Inc.,* 942 F.3d 752, 756 (6th Cir. 2019). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citation omitted.)

### B. Elements of Standing

"Not all disputes have a home in federal court." *Buchholz v. Tanick*, 946 F.3d 855, 860 (6th Cir. 2020). "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* (internal quotations and citation omitted). "The party seeking to invoke federal jurisdiction bears the burden to demonstrate standing and he 'must plead its components with specificity.'" *Daubenmire v. City of Columbus*, 507 F.3d 383, 388 (6th Cir. 2007) (quoting *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)).

"To satisfy Article III standing, the plaintiff must demonstrate that (1) he or she suffered an injury in fact that is concrete and particularized and actual or

imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision." *Mosley*, 942 F.3d at 756 (quotation marks and citation omitted). Each of the standing elements "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, plaintiffs must "'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "However, only one plaintiff needs to have standing in order for [a claim] to move forward." *Parsons v. United States DOJ*, 801 F.3d 701, 710 (6th Cir. 2015) (citation omitted).

## C. Direct Ship

In Count Two, Plaintiffs assert that Ohio's law barring foreign businesses without a proper permit from shipping wine to Ohio residents, "which Ohio will not issue to retailers who are not located in Ohio and/or do not obtain their wine from a wholesaler located in Ohio," violates the dormant Commerce Clause by favoring Ohio businesses at the expense of out-of-state wine retailers. (ECF No. 20 at 2.) Defendants counter that neither Plaintiff satisfies all three standing requirements so dismissal is proper.

6

### 1. Injury in Fact

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 136 S. Ct. at 1548 (quoting *Lujan*, 504 U. S. at 560).

*Legally protected interest.* For this aspect, plaintiffs "must show that the[y] . . . ha[ve] a right to relief if the court accepts the plaintiff's interpretation of the constitutional or statutory laws on which the complaint relies." *CHKRS, LLC v. City of Dublin*, 2021 U.S. App. LEXIS 102, *9 (6th Cir. Ohio January 4, 2021)(citation omitted). Plaintiffs have done so here. If the Court agrees with Plaintiffs' position that the direct ship laws violate the dormant Commerce Clause, Plaintiffs have a right to relief under the Declaratory Judgment Act.

*Concreteness.* "To allege a concrete injury, a plaintiff must establish that the injury is 'real and not abstract,' an element that considers whether the plaintiff has asserted a type of injury traditionally redressed by the courts." *Id.* at *8-9 (quoting *Buchholz*, 946 F.3d at 861). Plaintiffs argue that the direct ship law is unconstitutional. This is an argument that Courts routinely consider and redress where appropriate.

*Particularized.* "[A] plaintiff must show that a defendant's actions have harmed the plaintiff in a personal way, not in a generalized way that equally affects everyone else." *CHKRS, LLC*, 2021 U.S. App. LEXIS 102, *8. "To carry on interstate commerce is not a franchise or a privilege granted by the state; it is a right which

7

every citizen of the United States is entitled to exercise under the constitution and laws of the United States . . . ." *Crutcher v. Commonwealth*, 141 U.S. 47, 57 (1891). Hence, the "implied right to interstate commerce" exists on an individual, personal level. *B-21 Wines, Inc. v. Guy*, No. 3:20-cv-00099-FDW-DCK, 2020 U.S. Dist. LEXIS 151258, at *7-8 (W.D.N.C. Aug. 18, 2020)(citing *Crutcher*, 141 U.S. at 57). The inability of Miller to engage in commerce through purchasing wine he wants outside of Ohio's borders that is unavailable in Ohio equates to an injury-in-fact of that personal right.

House of Glunz's injury is likewise particularized. House of Glunz has a "'concrete commercial injury' because it is forbidden from shipping wines to [Ohio] buyers, thus robbing out-of-state wineries of those potential profits." *Huber Winery v. Wilcher*, No. 3:05-CV-289-S, 2006 U.S. Dist. LEXIS 107831, at *12 (W.D. Ky. Feb. 6, 2006)(quoting *Magaw*, 132 F.3d at 282). Furthermore, the prohibition is directed towards out-of-state wineries. In *Magaw*, the Sixth Circuit Court of Appeals found that gun manufacturers and dealers satisfied the standing requirements to challenge a regulation that was "directed at them in particular." *Magaw*, 132 F.3d at 282.

*Actual or imminent*. Where, as here, plaintiffs seek injunctive relief, they must demonstrate that there is both past injury and a real and immediate threat of future injury to establish that there is an injury in fact. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Mosley*, 942 F.3d at 756.

The harm of Miller and House of Glunz is actual. The harm stems from the denial of their right to engage in interstate commerce. For this pre-enforcement challenge, plaintiffs satisfy the threat of future injury requirement if they "allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)(quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1150 n.5, (2013)). To date, neither Miller nor House of Glunz have shipped wine directly into Ohio. That fact is not dispositive. Their "refusal to engage in [unlawful] activities is the typical substance of a declaratory judgment action and does not, by itself, preclude a finding that the plaintiff has standing." *ACLU v. NSA*, 493 F.3d 644, 656 (6th Cir. 2007). Both Miller and House of Glunz allege an intention to engage in direct shipping of wine to Ohio if the law is held unconstitutional. (ECF No. 1 at ¶ ¶ 5, 6.) That they fail to allege the where, when, why, and how of that intention is of no consequence. The Court declines to require Plaintiffs to plan illegal activity with specificity in order to be able to challenge the constitutionality of a law. In the Sixth Circuit "a citizen should be allowed to prefer 'official adjudication to public disobedience.'" *Magaw*, 132 F.3d at 287 (6th Cir. 1997)(quoting 13A, Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3532.5 at 183-84 (2nd ed. 1984)).

The issue thus becomes whether there is a credible threat that Defendants will prosecute Miller or House of Glunz under Ohio's direct-ship law in the future.

When "determining whether a complaint states a plausible claim for relief, . . . the court is confined to the complaint itself." *Agema v. City of Allegan*, 826 F.3d 326, 332 (6th Cir. 2016). "Plaintiffs need only support their claim of a credible threat of prosecution with general factual allegations, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (quotation marks and citation omitted).

In this case, the Complaint is devoid of such allegations. Hence, the Court **ORDERS** Plaintiffs to supply, by affidavits, particularized allegations of fact supportive of Plaintiffs' standing as to the credible threat of prosecution. *See Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362, 366 (6th Cir. 2018)(quoting *Warth*, 422 U.S. at 501). Plaintiffs must file these affidavits within seven days of this Opinion & Order; Defendants will then have seven days to file any opposition on this issue. Plaintiffs' failure to timely file the affidavits will result in dismissal of Plaintiffs' direct ship claim for lack of standing. If Plaintiffs timely file supporting documentation, the Court will treat the Defendants' Motion to Dismiss Plaintiffs' direct ship claim as a factual challenge under Fed. R. Civ. P. 12(b)(1).

### 2. Causation and Redressability

The Court will address causation and redressability if necessary after the requested additional briefing is complete.

### D. Transport Restriction

Count One asserts Ohio's limitation on the amount of wine that an individual may transport into the state in a thirty-day period violates the Commerce Clause because no similar limitation exists on intra-state purchases.[3] Defendants again argue that neither Plaintiff can show each of the three requisite standing elements such that dismissal is warranted.

Defendants argue that Plaintiffs lack sufficient injuries because Miller does not allege that he attempted to transport more than 4.5 liters of wine into Ohio. Defendants contend that he also fails to allege the requisite "how, when, or where [he] would purchase the wine." (ECF No. 19 at 23.) Defendants argue that House of Glunz "does not allege any actual or planned attempt to have an individual transport more than 4.5 liters of wine into Ohio." (ECF No. 19 at 22.) These omissions, according to Defendants, are fatal to this count because "'[s]uch 'some day' intentions -- without any description of concrete plans, or indeed even any specification of *when* the some day will be -- do not support a finding of the 'actual

---

[3] R.C. 4301.20(L) provides:

> Any resident of this state or any member of the armed forces of the United States, who has attained the age of twenty-one years, from bringing into this state, for personal use and not for resale, not more than one liter of spirituous liquor, four and one-half liters of wine, or two hundred eighty-eight ounces of beer in any thirty-day period, and the same is free of any tax consent fee when the resident or member of the armed forces physically possesses and accompanies the spirituous liquor, wine, or beer on returning from a foreign country, another state, or an insular possession of the United States; . . . .

11

or imminent' injury that our cases require.'" (ECF No. 19 at 22) (quoting *Lujan*, 504 U.S. at 564). As such, Defendants argue that the Plaintiffs fail to sustain their injury-in-fact burden.

Plaintiffs retort by arguing illegality and impossibility prevent the detail Defendants insist upon. (ECF No. 20 at 6.) They state that they have no concrete plans to break the law. Miller further argues that he could not complete the transport anyway due to unspecified COVID-19 travel restrictions.

### 1. Injury in Fact

*Legally protected interest*. If the Court agrees with Plaintiffs' position that the transport law violates the dormant Commerce Clause, Plaintiffs have a right to relief under the Declaratory Judgment Act. They have adequately alleged a violation of a legally protected interest.

*Concreteness*. Plaintiffs argue that the transport law is unconstitutional. This is an argument that Courts routinely consider and redress where appropriate. Plaintiffs' alleged injuries are concrete.

*Particularized*. Plaintiffs have alleged a particularized injury for the same reasons set forth *supra* in the discussion of the direct ship count.

*Actual or imminent*. The harm of Miller and House of Glunz is actual and stems from the denial of their right to engage in interstate commerce. That neither Miller nor House of Glunz: (1) attempted to transport more than the law allows into Ohio and (2) specified the details of their intention to bring or arrange more than

4.5 liters of wine into Ohio if the transport law is held unconstitutional is not dispositive for the same reasons stated *supra* in the direct-ship analysis.

R.C. § 4301.99(C) provides that whoever violates the transport statutes, R.C. § 4301.60 and 4301.20(L), is guilty of a misdemeanor of the first degree. Again, the question becomes whether there is a credible threat that Defendants will prosecute Miller and/or House of Glunz under Ohio's transport laws in the future. The Complaint is silent on this issue. Thus, the Court **ORDERS** Plaintiffs to supply, by affidavits, particularized allegations of fact supportive of Plaintiffs' standing as to the credible threat of prosecution for the transport count. *See Plunderbund Media, L.L.C.*, 753 F. App'x at 366 (quoting *Warth*, 422 U.S. at 501). Plaintiffs must file these affidavits within seven days of this Opinion & Order; Defendants will then have seven days to file any opposition on the credible threat issue. Plaintiffs' failure to timely file the affidavits will result in dismissal of Plaintiffs' transport claim for lack of standing. If Plaintiffs timely file supporting documentation, the Court will treat the Defendants' Motion to Dismiss Plaintiffs' transport claim as a factual challenge under Fed. R. Civ. P. 12(b)(1).

### 2. Causation and Redressability

The Court will address causation and redressability if necessary after the requested additional briefing.

## III. IMMUNITY

Defendants next challenge Plaintiffs' Complaint on Eleventh Amendment immunity grounds. Defendants concede that Yost is not immune. They argue that

Canepa, Strickrath and Pryce are. Plaintiffs assert that no immunity applies to those three defendants under *Ex Parte Young*, 209 U.S. 123 (1908). Defendants' arguments prove persuasive.

## A. Standard of Review

Eleventh Amendment immunity acts as a jurisdictional bar. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Hence, this portion of the motion shall be examined under Rule 12(b)(6). A motion to dismiss under that rule operates to test the sufficiency of the claims. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)(citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required under Fed. R. Civ. P. 8(a)(2). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks and citation omitted). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Analysis

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. Amend. XI. "This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *Thiokol Corp. v. Dep't of Treas.*, 987 F.2d 376, 381 (6th Cir. 1993)(internal citations omitted). The prohibition extends to suits against state officials sued in their official capacities because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Defendants, as the parties arguing that they are immune, have the burden of proof to show that they are entitled to immunity. *Guertin v. State*, 912 F.3d 907, 936 (6th Cir. 2019).

Because Canepa, Strickrath, and Pryce are state officials, they are protected by Eleventh Amendment immunity unless an exception applies. *Doe v. Dewine*, 99 F. Supp. 3d 809, 816 (S.D. Ohio April 15, 2015)(Dlott, J.). Plaintiffs argue *Ex Parte Young* is the applicable exception here. *Ex Parte Young* held:

> that individuals who, as officers of the state, are clothed
> with some duty in regard to the enforcement of the laws of
> the state, and who threaten and are about to commence
> proceedings, either of a civil or criminal nature, to enforce
> against parties affected an unconstitutional act, violating

15

> the Federal Constitution, may be enjoined by a Federal
> court of equity from such action.

*Ex Parte Young*, 209 U.S. at 155-56. "The theory of *Young* [i]s that an

unconstitutional statute is void . . . and therefore does not 'impart to [the official]

any immunity from responsibility to the supreme authority of the United States.'"

*Green v. Mansour*, 474 U.S. 64, 68 (1985) (quoting *Ex Parte Young*, 209 U.S. at

160)). "Under the doctrine of *Ex Parte Young*, suits against state officials seeking

equitable relief for ongoing violations of federal law are not barred by the Eleventh

Amendment." *Telespectrum, Inc. v. Public Serv. Com'n of Ky.*, 227 F.3d 414, 419 (6th

Cir. 2000).

Here, Plaintiffs sue Canepa, Strickrath, and Pryce in their official capacities

for prospective injunctive relief to prevent enforcement of Ohio's allegedly

unconstitutional direct-ship and transport laws. Application of the *Ex Parte Young*

exception is not automatic, however. The *Ex Parte Young* doctrine allows Plaintiffs'

suit to proceed against these Defendants if they (1) have "some connection with the

enforcement of the act," *Ex Parte Young*, 209 U.S. at 157; *and* (2) have enforced or

threatened to enforce the allegedly unconstitutional law. *Russell v. Lundergan-*

*Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015). Regarding the connection element,

"[g]eneral authority to enforce the laws of the state is not sufficient to make

government officials the proper parties to litigation challenging the law." *Children's*

*Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)(citation

omitted). The threat of enforcement aspect is satisfied "when there is a realistic

possibility the official will take legal or administrative actions against the plaintiff's

interests." *Russell*, 784 F.3d at 1048. *Ex Parte Young* is premised upon action. *Deters*, 92 F.3d at 1415.

Superintendent Canepa acknowledges that the Division of Liquor Control is "responsible for granting or refusing permits for the manufacture, distribution, and sale of intoxicating liquor and enforcing the provisions of Ohio's liquor control laws." (ECF No. 22 at 7.) But he contends, without opposition from Plaintiffs, that the Division "lacks authority to pursue legal or administrative actions against non-permitholders." (ECF No. 22 at 7 citing Ohio Rev. Code Chapters 4301 and 4303.) Plaintiffs are non-permitholders. Because Canepa lacks legal authority to take legal or administrative action adverse to Plaintiffs' interests, there is no realistic possibility that he will do so. *Ex Parte Young* does not apply and Canepa is immune under the Eleventh Amendment.

The Department of Public Safety, under Director Strickrath's direction, "does conduct investigations and related law enforcement actions against suspected violators of Ohio liquor laws" (ECF No. 19 at 18) and is "actively involved in enforcing Ohio's liquor control laws." (ECF No. 22 at 8.) As Plaintiffs point out, the Department enforced those laws in *Toledo v. Eischen*, 6th Dist. Lucas No. L-08-1062, 2008-Ohio-6531, and *Hobnob, Inc. v. Ohio Liquor Control Comm'n*, 10th Dist. Franklin No. 17AP-907, 2018-Ohio-3499. Each is distinguishable. First, while *Eischen* also involved R.C. 4301.60 and appellants without liquor permits, it took place more than twelve years ago. This substantial time gap does not support a finding that there is a realistic possibility the Department will take similar action

against the Plaintiffs here. Second, *Hobnob* did not involve the statutes now in focus but did address a permitholder. *Hobnob* is thus irrelevant. Hence, *Ex Parte Young* does not apply to Strickrath in this instance and he has Eleventh Amendment Immunity.

Lastly, the Liquor Control Commission, under Chairwoman Pryce, "is responsible only for hearing appeals of decisions by the Division," but no Plaintiff has a permit. (ECF No. 22 at 7.) Consequently, Pryce argues that there is no realistic possibility that the Liquor Control Commission will take legal or administrative action against the Plaintiffs. *Id*. Plaintiffs raise no substantive opposition to this argument. Chairwoman Pryce is therefore entitled to Eleventh Amendment immunity.

In sum, the Court **GRANTS** the Defendants' Motion to Dismiss as to Defendants Canepa, Strickrath, and Pryce. (ECF No. 22.)

## IV.   FAILURE TO STATE A CLAIM

The State's final argument in support of dismissal is that the laws are issued pursuant to the Twenty-First Amendment and are non-protectionist such that they do not violate the dormant Commerce Clause. (ECF No. 19 at 31.) Plaintiffs counter by arguing that whether the laws serve the public health or safety cannot be determined on a motion to dismiss. (ECF No. 20.)

Resolving this issue involves meshing the Commerce Clause with the Twenty-First Amendment. The Commerce Clause gives Congress the power

"[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. It "grants Congress power to preempt or permit state laws that interfere with interstate commerce, and it impliedly 'prohibits state laws,' as determined by the federal courts, 'that unduly restrict interstate commerce.'" *Lebamoff Enters. v. Whitmer*, 956 F.3d 863, 869 (6th Cir. 2020)(*en banc* denied May 26, 2020)(certiorari denied by *Lebamoff Enters. v. Whitmer*, 2021 U.S. LEXIS 414 (U.S., Jan. 11, 2021)) (quoting *Tenn. Wine & Spirits v. Thomas*, 139 S. Ct. 2449, 2459 (2019)). "Under the implied prohibition, if a state law discriminates against out-of-state goods or nonresident economic actors, it may survive only if tailored to advance a legitimate state purpose." *Whitmer*, 956 F.3d at 869 (quotation and citation omitted).

"While the Commerce Clause grants Congress power to eliminate state laws that discriminate against interstate commerce, the Twenty-first Amendment grants the States the power to regulate commerce with respect to alcohol." *Id*. Section Two of the Amendment prohibits "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof." U.S. Const. amend. XXI, § 2. Thus, "the section gives the States broad latitude to regulate the distribution of alcohol within their borders." *Whitmer*, 956 F.3d at 869.

Dormant Commerce Clause review is typically reserved for "laws that protect in-state economic interests at the expense of out-of-state competitors." *Garber v. Menendez*, 888 F.3d 839, 843 (6th Cir. 2018). Plaintiffs allege, and Defendants concede for purposes of this motion only, that Ohio's direct-ship and transport laws

have a discriminatory effect on interstate commerce. (ECF No. 19 at 34.) Therefore, to determine whether the laws violate the dormant Commerce Clause, the Court asks whether the laws "can be justified as a public health or safety measure or on some other legitimate non-protectionist ground." *Tenn. Wine & Spirits*, 139 S. Ct. at 2474. If the "'predominant effect of the law is protectionism,' rather than the promotion of legitimate state interests, the Twenty-first Amendment does not 'shield[]' it." *Whitmer*, 956 F.3d at 869 (quoting *Tenn. Wine & Spirits*, 139 S. Ct. at 2474.) Hence, the question is whether the laws' predominant effect is legitimate, non-protectionist measures or public health and safety interests.

According to the State, *Whitmer* establishes that the laws are non-protectionist and therefore not in violation of the dormant Commerce Clause. The *Whitmer* plaintiffs included individual wine consumers, an individual wine merchant, and an Indiana alcoholic retailer. They asserted that Michigan's liquor laws prohibiting "non-Michigan wine retailers from 1) selling and distributing wine directly to Michigan consumers, and 2) obtaining licenses and engaging in their occupations in Michigan" violated the dormant Commerce Clause. *Lebamoff Enters. v. Snyder*, 347 F. Supp. 3d 301, 304 (E.D. Mich. 2018). The trial court agreed and granted summary judgment in plaintiffs' favor.

The Sixth Circuit reversed. Reasoning that Section Two of the Twenty-First Amendment granted the states authority over the importation of alcohol into their borders, the appeals court determined that Michigan's laws promoted legitimate state interests and did not flow from state protectionism such that the laws did not

violate the dormant Commerce Clause. *Whitmer*, 956 F.3d at 867. With the benefit of a full evidentiary record, the Sixth Circuit found Michigan's legitimate state interests to include "promoting temperance and controlling the distribution of [alcohol]" and collecting tax revenue. *Id.* at 871-72.

From this, Defendants argue that Ohio's three-tier distribution scheme is similar to Michigan's so it follows that Ohio's laws do not violate the dormant Commerce Clause under *Whitmer*. But there are two key differences between *Whitmer* and this case precluding that result. First, *Whitmer* was decided on a full evidentiary record. That record enabled the appeals court to consider the legislative history of Michigan's liquor laws, Michigan's enforcement of the laws, and local issues Michigan officials were addressing via their liquor laws. *Id. at* 877 (agreeing that Michigan "presented enough evidence, which the plaintiffs have not sufficiently refuted, to show its in-state retailer requirement serves the public health.") (McKeague, J., concurring)(citing *Tennessee Wine,* 139 S. Ct. at 2474). Such evidence is not present in this case, as it is only at the motion to dismiss stage. Second, due to that full record, the Sixth Circuit was able to compare Michigan and Indiana liquor law to determine that Indiana's laws would permit it to undercut Michigan's prices were Michigan's liquor laws deemed unconstitutional. *Whitmer*, 956 F.3d at 872. That undercutting would then serve to increase consumption via cheaper prices, in contravention of Michigan's non-protectionist interest in limiting consumption. *Id*. It would also cause Michigan to lose significant tax revenue. In this case, no information about Illinois's law is before the Court to enable such a

comparison and determination relative to Ohio's direct ship and transport laws. *Whitmer* thus fails to automatically establish that Ohio's laws are not in violation of the dormant Commerce Clause as a matter of law.

The State argues that its laws are non-protectionist because its three-tier system allows it "to impose various health and safety measures" and to impose mandatory minimum pricing on wine to decrease demand via higher prices. (ECF No. 22 at 9-10.) The three-tier system may well serve legitimate state interests. But the question is whether the predominant *effect* of the laws is protectionism or promotion of those legitimate interests. *See Whitmer*, 956 F.3d at 869. On the present record, such a determination is both impossible and improper. This argument fails to support dismissal.

## V. CONCLUSION

Plaintiffs shall file their credible threat affidavits within seven days of this Opinion & Order. Defendants will then have seven days to file any opposition. The Court's decision on Defendants' Motion to Dismiss for lack of standing will be held in abeyance pending passage of those deadlines.

Defendants' Motion to Dismiss Plaintiffs' claims against Defendants Canepa, Strickrath and Pryce is **GRANTED**. (ECF No. 19.)

Defendants' Motion to Dismiss for failure to state a claim is **DENIED**. (ECF No. 19).

**IT IS SO ORDERED**.

s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**