IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEREK BLOCK, *et al.*, | : | CASE NO.: 20cv-3686 |
| | : | JUDGE MORRISON |
| Plaintiffs, | : | MAGISTRATE VASCURA |
| v. | : | |
| JIM CANEPA, SUPERINTENDENT OF LIQUOR CONTROL, *et al.*, | : | |
| | : | |
| Defendants. | | |

**OPINION AND ORDER**

The Court's February 17, 2021 Opinion and Order ("Order") partially addressed Ohio Attorney General Dave Yost's ("Yost") Motion to Dismiss the Complaint of Plaintiffs Kenneth Miller ("Miller") and House of Glunz, Inc. ("Glunz") as to lack of standing. (ECF Nos. 19, 33.) The Complaint's failure to include information regarding the credible threat of prosecution aspect of the standing discussion prevented full analysis. Thus, the Court permitted Miller and Glunz to file affidavits regarding that topic for both counts of the Complaint. (ECF No. 33, PageID 259, 262.) The Court also allowed Yost to respond in opposition. Both sides took advantage of those opportunities. (ECF Nos. 34, 35.)

1

The responsive filings permit the Court to complete its review of whether Plaintiffs show that they have standing to assert both counts. Consideration of those filings leads to the conclusion that they do for the direct ship claim but do not for the transport claim.

I.  BACKGROUND

The following material information is taken from Plaintiffs' Complaint, which the Court accepts as true for purposes of addressing the instant motion.

Miller is an Ohio resident and wine collector. Glunz is an Illinois corporation that markets, sells, and ships wine at retail to consumers. Yost is the Attorney General of Ohio. He is sued in his official capacity and is alleged to have acted at all relevant times under color of law.

Ohio's liquor laws create a three-tier distribution system. Under this system, the wine manufacturer or importer (first tier) sells wine to a wholesale distributor (second tier) who then resells to a retailer (third tier). (ECF No. 19, PageID 125-26.) A retailer then sells wine to consumers. *Id.* The manufacturer, distributor, and retailer must each obtain proper permits from the State.

Miller wants to buy wine directly from retailers outside of Ohio that offer wine not available to him in Ohio for shipment to his home but Ohio prohibits such shipments. R.C. § § 4301.58(B), 4301.60, and 4303.25. He has not attempted to complete such a purchase. Miller wants the opportunity to make such purchases. Miller also travels to other states to buy wine. He wants to be able to transport

more than the maximum 4.5 liters Ohio law allows into Ohio from other states but he has not attempted to do so. R.C. § 4301.20.

Glunz has no physical location in Ohio and no intention of opening one here. Glunz does not have a permit from the Ohio Department of Liquor Control that would allow it to ship wine directly to Ohio residents. It has not applied for any permit that might allow it to do so. Glunz has customers who want it to ship wine to Ohio. Glunz has not attempted to complete such sales because Ohio law prevents Glunz from doing so without a permit or physical Ohio presence. It has therefore lost business. Glunz does not allege "any actual or planned attempt to have an Ohio resident transport more than" the limit into Ohio. (ECF Nos. 1 and 19, PageID 133.)

Plaintiffs use 42 U.S.C. § 1983 to challenge Ohio's direct-ship prohibition and transport limitation.[1] They highlight the ability of Ohio retailers to ship wine to non-residents and the lack of quantity restriction on consumers transporting wine within the state to argue that those laws violate the dormant Commerce Clause. They seek a declaratory judgment that the laws are unconstitutional and an injunction "barring the [Yost] from enforcing them and requiring [Yost] to permit the shipping and transportation of wine from out-of-state retailers to Ohio consumers." (ECF No. 20 at 2.) They further request costs and expenses, including attorney's fees.

---

[1] The Court interprets the Complaint's reference to "some retailers" in ¶ 30 to refer to Glunz. (ECF No. 1.) Plaintiffs did not notify the Court that this interpretation was incorrect per the Order. (ECF No. 33, PageID 252 n.2.) This means that Glunz is likewise asserting the transport claim.

3

Relevantly, Yost moved to dismiss arguing that Plaintiffs lack standing. (ECF No. 19.) Plaintiffs opposed. (ECF No. 20.) Intervenor Defendant Wholesale Beer & Wine Association of Ohio ("Wholesale") urged the Court to refrain from addressing a proper remedy but did not oppose the motion to dismiss. (ECF No. 21.) Yost replied. (ECF No. 22.)

## II. STANDARD OF REVIEW

Federal R. Civ. P. 12(b)(1) applies to Yost's motion as to standing. *See Crawford v. United States Dep't of the Treasury*, No. 3:15-CV-00250, 2016 U.S. Dist. LEXIS 55395, at *18 (S.D. Ohio Apr. 25, 2016) (Rose, J.); *see also* ECF No. 33, PageID 259, 262. That rule allows a defendant to file a motion to dismiss based on a "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 666-67 (S.D. Ohio 2019) (Marbley, J.) (citation omitted).

The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017). The latter is present here. A factual attack on subject matter jurisdiction challenges a complaint's factual predicate. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). Hence, the Court may consider evidence outside the pleadings to determine if jurisdiction exists. *See Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir.

2003). "When examining a factual attack under Rule 12(b)(1), 'the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Glob. Tech., Inc.*, 807 F.3d at 810 (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). In a factual challenge to the Court's jurisdiction, there is no presumption of truthfulness in favor of the non-moving party. *United States v. A.D. Roe Co.*, 186 F.3d 717, 722 (6th Cir. 1999).

## III. ANALYSIS

The remaining issue for decision is whether Plaintiffs show that they have standing to assert both counts.

### A. Elements of Standing

"Not all disputes have a home in federal court." *Buchholz v. Tanick*, 946 F.3d 855, 860 (6th Cir. 2020). "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* (internal quotations and citation omitted). "The party seeking to invoke federal jurisdiction bears the burden to demonstrate standing and he 'must plead its components with specificity.'" *Daubenmire v. City of Columbus*, 507 F.3d 383, 388 (6th Cir. 2007) (quoting *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)).

"To satisfy Article III standing, the plaintiff must demonstrate that (1) he or she suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

5

challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision." *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019) (quotation marks and citation omitted). Each of the standing elements "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, plaintiffs must "'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "However, only one plaintiff needs to have standing in order for [a claim] to move forward." *Parsons v. United States DOJ*, 801 F.3d 701, 710 (6th Cir. 2015) (citation omitted).

**B. Direct Ship Claim**

In Count Two, Plaintiffs assert that Ohio's law barring foreign businesses without a proper permit from shipping wine to Ohio residents, "which Ohio will not issue to retailers who are not located in Ohio and/or do not obtain their wine from a wholesaler located in Ohio," violates the dormant Commerce Clause by favoring Ohio businesses at the expense of out-of-state wine retailers. (ECF No. 20, PageID 152.) Yost's Motion to Dismiss counters that neither Plaintiff satisfies all three standing requirements so dismissal is proper.

### 1. Injury in Fact

The Court previously determined that Plaintiffs satisfied the legally protected interest, concreteness, particularized, and actual injury components of standing's first prong for this count. (ECF No. 33, PageID 255-59.) Left for discussion was whether Plaintiffs proved that they faced a credible threat of prosecution were they to engage in direct shipment activities.

This case presents a pre-enforcement challenge. In this situation, "whether the plaintiff has standing to sue often turns upon whether he can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against him." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014). The Supreme Court directs that "[a]n allegation of future injury may satisfy the injury-in-fact requirement if the alleged threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016)(internal quotations and citations omitted). Thus, plaintiffs satisfy the threat of future injury requirement if they "allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1150 n.5 (2013)).

Each Plaintiff indicates an intention to engage in direct shipments of wine. Such shipments involve the constitutional interest of commerce. The state statutes

listed above prescribe the desired conduct. Thus, the focus is upon whether there is a credible threat of prosecution against Plaintiffs under those statutes.

The Sixth Circuit presents several factors for the Court to consider in this instance. Those factors include: (1) whether there is a history of past enforcement against the plaintiffs or others; (2) whether enforcement warning letters were sent to the plaintiffs regarding their specific conduct; (3) whether an attribute of the challenged statute makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action; and/or (4) whether defendants refused to disavow enforcement of the challenged statute against a particular plaintiff. *McKay*, 823 F.3d at 869 (citations and quotations omitted). Courts find a credible threat exists when some combination of these factors are present. *See Susan B. Anthony List v. Driehaus*, 573 U.S. at 164. Conversely, the Sixth Circuit

> decline[s] to find a credible threat of prosecution—and, thus, decline[s] to find pre-enforcement standing—where plaintiffs have failed to show such a combination and where 'the record is silent as to whether the [defendants] threatened to punish or would have punished' a plaintiff for proposed conduct that might violate the challenged policy or statute.

*McKay*, 823 F.3d at 867 (quoting *Morrison v. Bd. of Educ.*, 521 F.3d 602, 610-11 (6th Cir. 2008)).

"Plaintiffs need only support their claim of a credible threat of prosecution with general factual allegations, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the

8

claim." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (quotation marks and citation omitted).

Plaintiffs offer the Declaration of Christopher Donovan to support their credible threat contention. Donovan is an officer of Glunz. (ECF No. 34-1.) He avers that Glunz would like to engage in selling and shipping wine directly to Ohio residents. *Id.*, ¶ 3. He points to Yost's July 2020 suit against various online retailers of wine and spirts as proof of past enforcement against non-permit holder businesses like Glunz. Specifically, in *State of Ohio, ex rel. Attorney General Dave Yost v. Wine.com, et al.*, United States District Court for the Southern District of Ohio case number 20cv-3430, Yost sought to enjoin retailers who lacked Ohio permits from direct-to-consumer shipments of wine and spiritous liquor to Ohio consumers. *See* Docket for 20cv-3430. *Id.* The case was resolved via numerous consent judgments wherein the online wine retailers agreed to stop shipping wine directly to Ohio consumers. *Id.* That case therefore establishes Yost's history of recent enforcement against entities like Glunz.

Glunz further provides a July 2020 Columbus Dispatch newspaper article addressing the *Wine.com* lawsuit wherein Yost is quoted as saying that the State is "putting the marketplace on notice" that "[d]oing business in Ohio means following the current law and paying Ohio taxes." (ECF No. 34-4.) This shows Yost's intent to initiate future prosecutions against retailers like Glunz.

Although Glunz does not allege that Yost sent it warning letters or that an attribute of the challenged statutes makes enforcement easier or more likely, Glunz

9

has established a credible threat of prosecution. *Wine.com* shows Yost's past history of enforcement against similar plaintiffs. The *Dispatch* article indicates Yost's intent to continue such prosecutions. And, Yost does not disavow enforcement of the challenged statute against Glunz. Taken together, a finding of credible threat is supported in this instance.

Finding Glunz's Declaration dispositive, the Court need not address Miller's Declaration or Yost's arguments thereto. Instead, the Court will proceed to examine the remaining elements of standing—causation and redressability.

### 2. Causation

Yost's arguments as to causation focus only on Block. (ECF No. 19, PageID 136-37.) Block is no longer a party to his matter. (ECF No. 30.) As such, the Court treats Yost's causation contention as addressing Miller and Glunz.

Yost argues that Miller and Glunz cannot satisfy the traceability aspect of the second standing element—causation. In this regard, Plaintiffs "must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973). Specifically, they "must show 'a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.'" *Buchholz*, 946 F.3d at 866 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). Put another way, "[t]o satisfy Article III, plaintiff[s] must show 'the asserted injury was the consequence of the defendants' actions[.]'" *Buchholz*, 946 F.3d at 866 (quoting *Warth,* 422 U.S. at 505).

10

"At the pleading stage, the plaintiff's traceability burden is 'relatively modest[.]'" *Buchholz*, 946 F.3d at 866 (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)). Thus, harms that flow "indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). "'[A]n economic injury which is traceable to the challenged action' satisfies the requirements of Article III standing." *NRA of Am. v. Magaw*, 132 F.3d 272, 282 (6th Cir. 1997) (quoting *Linton v. Comm'r of Health & Env't*, 973 F.2d 1311, 1316 (6th Cir. 1992)).

Yost asserts that Plaintiffs' asserted injuries cannot be traced to him because he took no affirmative action preventing Miller from ordering and receiving wine from out-of-state or, presumably, preventing House of Glunz from directly shipping wine to Ohio consumers. In response, Plaintiffs argue that the source of their injuries are "the laws banning shipping and transportation" and Yost's ability to enforce same. (ECF No. 20, PageID 153.) Plaintiffs offer two cases in support of their contention that the laws' existence coupled with Yost's enforcement capability is sufficient to satisfy the traceability component. Finding one dispositive, the Court refrains from addressing the other.

The decisive case Plaintiffs cite to is *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999). Therein, Cutshall challenged the constitutionality of Tennessee's sex offender registration and notification statute on a variety of grounds. Of import is the appeals court's standing analysis in response to the State's contention that

11

Cutshall's purported injuries were not traceable to the State such that he lacked standing to bring his claims. The Sixth Circuit disagreed, holding "[t]o satisfy this requirement, Cutshall need not have a *valid* claim, only an *arguable* one." *Cutshall*, 193 F.3d at 471-72 (emphasis added). "The absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). The *Cutshall* court continued:

> Cutshall has argued, *inter alia*, that releasing the registry information operates as an impermissible imposition of punishment. *Because it is the state that controls the release of the information, the alleged injuries are causally connected to the state's conduct.* We need not agree, as a threshold matter, that the Act imposes a punishment. For Article III purposes, we need only determine that Cutshall has an arguable claim of injuries traceable to the state. We think he has just such a claim.

*Cutshall*, 193 F.3d at 472 (emphasis added).

Plaintiffs, like Cutshall, allege that that Yost enforces Ohio's statutory scheme controlling the flow of wine into the state from foreign jurisdictions. Thus, under *Cutshall*, Plaintiffs' "alleged injuries are casually connected to the state's conduct." *Id.*; *see also Doe v. Dewine*, 99 F. Supp. 3d 809, 821 (S.D. Ohio 2015) (Dlott, J.) (holding same); *see also Doe v. Bassett*, No. 1:18-cv-508, 2019 U.S. Dist. LEXIS 15662, at *15 n.4 (S.D. Ohio Jan. 31, 2019) (Litkovitz, M.J.) (ECF No. 33 at 10 n.4) (holding similarly) (objections outstanding since August 2019).

This conclusion finds further support in *Huber Winery v. Wilcher*, No. 3:05-CV-289-S, 2006 U.S. Dist. LEXIS 107831 (W.D. Ky. Feb. 6, 2006). The *Huber Winery* court was likewise faced with a commerce clause challenge by an out-of-state winery and individual oenophiles to a Kentucky law prohibiting direct

12

shipment of wine to Kentucky residents by foreign wine retailers. The Court found a sufficient causal connection present, noting that the laws "coerced obedience" to those provisions which prohibited the plaintiffs from enjoying their rights. *Id.* at *12. "If the Kentucky statutory scheme did not prohibit direct shipment to Kentucky residents, [the winery] could ship to buyers in Kentucky and the individual plaintiffs could receive shipments from out-of-state wineries." *Id.* at *12-13. That is the situation here.

Because of the laws and Yost's power to enforce same, as well as the reasoning set forth in *Cutshall*, *DeWine*, *Bassett* and *Huber*, the Court concludes that Plaintiffs' alleged injuries are fairly traceable to Yost. Plaintiffs sustain their "modest" burden regarding causation.

### 3. Redressability

Redressability is the third and final element of standing. This aspect addresses the "causal connection between the alleged injury and the judicial relief requested." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984). To satisfy this requirement, the Sixth Circuit directs that:

> the relief the plaintiff is seeking must provide redress for the injury. An injury is redressable if a court order can provide substantial and meaningful relief. A plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury. The relevant standard is likelihood—whether it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Parsons*, 801 F.3d at 715 (internal quotations and citations omitted).

Plaintiffs seek a declaratory judgment that Ohio's direct-ship liquor laws are unconstitutional. They also request an injunction prohibiting Yost from enforcing those laws and requiring Yost to allow the shipping of wine from out-of-state retailers directly to Ohio consumers. Yost argues that this relief would result in "more restrictive laws for in-state retailers rather than more permissive laws for out-of-state retailers" because Ohio's cited statutes only allow for "leveling down" and not "leveling up." (ECF Nos. 19, PageID 137-39 and 22, PageID 178-79.) at 26-28 and 22 at 5-6.) Stated differently, Yost contends that legislative intent dictates "the only remedy for Plaintiffs would be to further limit rather than expand commerce in alcoholic beverages, which raises a redressability issue in light of the injuries alleged." *B-21 Wines, Inc. v. Guy*, No. 3:20-cv-00099-FDW-DCK, 2020 U.S. Dist. LEXIS 151258, at *9 (W.D. N.C. Aug. 18, 2020) (internal citation and quotations omitted).

Yost's leveling argument fails because Plaintiffs need not show that relief would cure every asserted injury. *Parsons*, 801 F.3d at 715. Partial relief is sufficient at this stage. "Even if the Court would decide the appropriate remedy is to 'level down,' as Defendants suggest, Plaintiffs' injuries would be redressed by eliminating direct shipping to in-state consumers entirely by both in-state and out-of-state wine retailers. Thus, Plaintiff's injuries are redressable." *B-21 Wines, Inc.*, 2020 U.S. Dist. LEXIS 151258, at *9. In other words, the Court could grant partial relief by issuing a judgment declaring that the laws violate the Commerce Clause

even if that potential relief would result in Plaintiffs' inability to participate in direct-ship orders.

Consequently, Plaintiffs satisfy their redressability burden. While both parties dispute the result of one type of possible relief, the Court need only find that some form of relief is adequate and possible at this juncture. The Court has done so. As Intervenor Wholesale properly urges, hypothesizing as to what that relief should be based merely upon the pleadings and absent a finding of a constitutional violation would equate to an impermissible advisory opinion. (ECF No. 21.)

At least one plaintiff—Glunz—has satisfied each of the three standing requirements, and Plaintiffs may proceed with their direct ship count. Yost's Motion to Dismiss this count for lack of standing is **DENIED**. (ECF No. 19.)

**C. Transport**

Count One asserts that Ohio's limitation on the amount of wine that an individual may transport into the state in a thirty-day period violates the Commerce Clause because no similar limitation exists on intra-state purchases.[2]

---

[2] R.C. 4301.20(L) provides:

> Any resident of this state or any member of the armed forces of the United States, who has attained the age of twenty-one years, from bringing into this state, for personal use and not for resale, not more than one liter of spirituous liquor, four and one-half liters of wine, or two hundred eighty-eight ounces of beer in any thirty-day period, and the same is free of any tax consent fee when the resident or member of the armed forces physically possesses and accompanies the spirituous liquor, wine, or beer on returning from a foreign country, another state, or an insular possession of the United States; . . . .

Yost again argues that neither Plaintiff can show each of the three requisite standing elements such that dismissal is warranted. Only Miller submitted declarations regarding the transport claim. Hence, the Court analyzes standing only as to him.

The Court previously determined that Miller satisfied the legally protected interest, concreteness, particularized, and actual injury components of standing's first prong. (ECF No. 33, PageID 260-62.) Therefore, remaining for determination is whether Miller shows that he faces a credible threat of prosecution were he to engage in transport activities in excess of the statutorily allotted amount.

R.C. § 4301.99(C) provides that whoever violates the transport statutes, R.C. § 4301.60 and 4301.20(L), is guilty of a misdemeanor of the first degree. Miller's Declaration states that he "would like to be able to buy wine in other states when [he] visit[s] and transport that wine back into Ohio for [his] personal use without risking committing a criminal offense or being subject to fines and penalties." (ECF No. 34-5, PageID 302, ¶ 3.) He further avers that he has "often brought back more than [4.5 liters of wine] at one time," and "in his experience" wine stores offer a discount if consumers buy more than that amount. *Id.* ¶ 4. Thus, the quantity limitation prevents him from "taking advantage of wine-purchasing opportunities outside Ohio." *Id.*

*Past enforcement.* Miller himself has not been the target of past enforcement for his transport activities. Instead, he states that he is aware of an undated Reddit post indicating that the poster "was stopped by police and charged with illegally

16

transporting alcohol into Ohio that he bought in Kentucky." *Id.* ¶ 6. Specifically, the post provides:

> So a few days ago I got pulled over by the police right after driving back into Ohio across the Kentucky border. I am an Ohio resident with an Ohio driver license. I had driven to Kentucky to buy bourbon (lots of people do, there's better selection over there) and had a bottle of bourbon I bought there in my car. The police searched my car and found the bourbon and the receipt from the Kentucky liquor store. They were BCI cops and they arrested me for illegal transportation of alcohol, and said that since I live in Ohio I can only buy alcohol here, and can't drive to Kentucky. . . .

(ECF No. 34-7, PageID 306.)

As further evidence of past enforcement, Miller offers a January 2, 2019 press release from Ohio Liquor Control and the Ohio State Highway Patrol's Ohio Investigative Unit detailing charges levied against five Ohio residents for illegal re-sale of beer or intoxicating liquor. (ECF No. 34-8, PageID 308.)

Both proffers fail to show a credible threat of prosecution via past enforcement. Bourbon, not wine, is the subject of the Reddit post. And because the post is undated, the Court cannot discern whether the events described therein are temporary proximate to this case so as to indicate an increased risk of prosecution. Furthermore, Miller does not seek to re-sell beer or liquor. Rather, he wants to purchase and personally imbibe more than the allotted quantity of wine. "[T]he credibility of a 'threat' is diluted when a factual dissimilarity exists between the plaintiff's intended future conduct and the conduct that triggered any prior prosecutions under the challenged statute." *Bronson v. Swensen*, 500 F.3d 1099, 1108 (10th Cir. 2007) (citation omitted).

17

Miller also attaches webpages from law firms offering to defend individuals against charges levied under the transport statutes. (ECF Nos. 34-9, 34-10, PageIDs 309-13.) Such advertisements do not evince a credible threat of prosecution; only actual prosecutions do.

None of the other factors is present in this case. Miller does not assert that Yost sent him warning letters regarding his transport activities. He makes no argument regarding whether the challenged statutes contain attributes making enforcement easier or more likely.

In sum, Miller fails to sufficiently allege a factual predicate establishing a credible threat of prosecution for the transport count. Thus, he does not show an injury in fact for Article III standing. An examination of causation and redressability therefore becomes unnecessary. Yost's Motion to Dismiss the transport claim for lack of standing is **GRANTED**. (ECF No. 19.)

## IV. CONCLUSION

Yost's Motion to Dismiss Plaintiffs' transport claim (Count One) is **GRANTED**.

Yost's Motion to Dismiss Plaintiffs' direct ship claim (Count Two) is **DENIED**. The case shall proceed as to Count Two only.

**IT IS SO ORDERED**.

/s/Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**