In the United States District Court
For the Southern District of Ohio
Eastern Division

| | |
|---|---|
| **Derek Block, et al.**  )<br>  *Plaintiffs*  )<br>  )<br> vs.  )<br>  )<br> **Jim Canepa, et al.**  )<br>  *Defendants*  ) | Case No. 2:20-cv-03686<br><br>Judge Sarah D. Morrison<br>Magistrate Judge Chelsey M. Vascara |

**PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This memorandum is being submitted in reply to both the Defendants' Response (ECF No. 79) and the Intervenor's Response (ECF No. 78) to Plaintiffs' Motion for Summary Judgment.

**A. Reply on the merits**

The parties' arguments boil down to disagreement over which Sixth Circuit precedents this Court should follow when deciding how to balance the Commerce Clause and the 21st Amendment. The cases cited by Plaintiffs give more weight to the nondiscrimination rule of the Commerce Clause. The one case relied on by Defendants gives more weight to the 21st Amendment.

Plaintiffs contend that the Court should follow four cases: *Heald v. Engler*, 342 F.3d 517 (6th Cir. 2003), *aff'd* 544 U.S. 460 (2005); *Byrd v. Tenn. Wine & Spirits Retailers Assoc.*, 883 F.3d 608 (6th Cir. 2018), *aff'd* 139 S.Ct. 1229 (2019); *Cherry Hill Vineyards v. Lilly*, 553 F.3d 423 (6th Cir. 2008); and *Jelovsek v. Bredesen*, 545 F.3d 431 (6th Cir. 2008). Those cases applied Supreme Court precedent that the State's 21st Amendment authority to regulate alcohol is limited by the non-discrimination rule of the Commerce Clause. If a law discriminates against out-of-state liquor interests it is unconstitutional unless the State produces concrete evidence that the law advances a legitimate interest that could not be served by nondiscriminatory alternatives. The cases hold that strict scrutiny must be given to the State's purported justification.

1

Under this standard, Ohio's ban on direct shipping is unconstitutional. The State has presented no evidence that direct shipping from out-of-state retailers poses a public safety risk beyond the risks associated with alcohol consumption generally. It has presented no evidence that direct shipments from out-of-state retailers could not be monitored effectively by issuing carefully regulated direct shipping permits which Ohio already uses for other forms of wine shipping. Defendants offer only the speculation of witnesses who think direct shipping might cause problems in Ohio that have not occurred in other states, but who have no facts or data to support them. Even if admissible, this would fall far short of the concrete evidence needed to justify discrimination.

Defendants contend that this Court should follow one case: *Lebamoff Enterp. v. Whitmer*, 956 F.3d 863 (6th Cir. 2020). That panel declined to follow prior Circuit precedent or acknowledge the nondiscrimination principle of the Commerce Clause. Instead, it held that the 21st Amendment gave exclusive authority over alcohol to the states and "not to federal judges." 956 F.3d at 875. The panel rejected strict scrutiny in favor of a highly deferential standard of review under which the State's lack of evidence was largely irrelevant. 956 F.3d at 869. Defendants argue that Ohio's ban on direct shipping easily passes constitutional inspection if the State's justification is not given close scrutiny.

The Sixth Circuit favors Plaintiffs in the dispute over which precedents control. When Circuit precedents conflict, the "prior decision remains controlling authority," not the most recent. *Salmi v. Sec'y of HHS*, 774 F.2d 685, 689 (6th Cir. 1985). Prior to *Lebamoff*, four different panels and nine different Sixth Circuit judges said the 21st Amendment is limited by the nondiscrimination principle of the Commerce Clause and the State's purported justification is given strict scrutiny. *Byrd v. Tenn. Wine*, 883 F.3d at 623; *Heald v. Engler,* 342 F.3d at 524; *Cherry Hill Vineyards v. Lilly,* 553 F.3d at 431; *Jelovsek v. Bredesen*, 545 F.3d at 436. One panel of the Sixth Circuit cannot nullify the decisions of previous panels, especially when all those previous panels concur. The earlier precedents remain controlling until they have been overruled by the Sixth Circuit *en banc* or the

Supreme Court. *Spencer v. Bouchard*, 449 F.3d 721, 726 (6th Cir. 2006). *Lebamoff* was not an *en banc* opinion, and the Supreme Court has certainly not overruled any of the prior Sixth Circuit cases -- it has affirmed them. *Granholm v. Heald,* 544 U.S. at 466, *affirming Heald v. Engler; Tenn. Wine,* 139 S. Ct. at 2476, *affirming Byrd v. Tenn. Wine & Spirits Retailers Assoc.*

Defendants counter that this situation falls into an exception to the rule that prior Circuit precedents control. They argue that the Supreme Court in *Tenn. Wine* changed the law, thereby effectively overruling the four cases relied on by Plaintiffs. The Defendants argue that *Tenn. Wine* abandoned the nondiscrimination rule and replaced it with a "different inquiry" under which a liquor law is given only minimal scrutiny. The State need only show a plausible connection to public health and safety and does not need concrete evidence that the law advances a state interest that could not be served by nondiscriminatory alternatives.

The argument is nonsense. The Defendants point to no actual language from *Tenn. Wine* that questions *Granholm,* says that the nondiscrimination rule no longer applies, eliminates the State's burden to present concrete evidence, or retreats from strict scrutiny. To the contrary, the Court cited *Granholm* constantly, reiterated that the nondiscrimination principle applies, 139 S.Ct at 2470, reiterated that concrete evidence is required, *id.* at 2474, reiterated that the state must prove that nondiscriminatory alternatives would be unworkable, *id.* at 2474-75, and subjected Tennessee's purported justification to exacting scrutiny. *Id.*, at 2475-76. Defendants rely instead on *Lebamoff's* rhetorical mischaracterization of *Tenn. Wine* as making these sweeping changes in constitutional law, often blurring the line between these two opinions.[1]

Defendants make one final argument for not following the controlling precedents of this Circuit:

---

[1] Defendants occasionally cross the line and claim language from *Lebamoff* is actually from *Tenn. Wine., e.g.*, claiming that the Supreme Court said "**Rather than skeptical review,** we ask whether the law 'can be justified as a public health or safety measure.'" Def. Opp. at 5 (PageID 4999). That phrase comes from *Lebamoff,* 956 F.3d at 869, not *Tenn Wine.*.

A few cases in other Circuits[2] have upheld state laws banning direct shipping by retailers. Def. Opp. at 5-6 (PageID 4999-5000). Most of the decisions cited were made prior to *Tenn. Wine* and were based on the premise that laws regulating retailers were subject to lesser scrutiny that laws regulating producers. They are no longer good law because *Tenn. Wine* held to the contrary, that "[t]here is no sound basis for this distinction." 139 S.Ct. at 2471. However, even if they were still good law in their circuits, they would not justify this Court abandoning Sixth Circuit precedent. District Courts are bound to follow precedents from its own circuit, not those from other circuits. *Timmreck v. U.S.*, 577 F.2d 372, 375 n.6 (6th Cir. 1978).

**B. The alleged unquestionable legitimacy of the three-tier system is irrelevant**

Defendants offer a second argument that the direct shipping ban is immune from strict scrutiny because it is part of Ohio's three-tier system which is "unquestionably legitimate." Def. Opp. at 7-9 (PageID 5000-03), WBWAO Opp. at 9 (PageID 4975). Defendants again rely on *Lebamoff* and cases from other circuits as their authority, rather than the Supreme Court and controlling precedents from this Circuit. The Supreme Court has rejected this argument:

> This argument ... reads far too much into *Granholm's* discussion of the three-tiered model. Although *Granholm* spoke approvingly of that basic model, it did not suggest that § 2 sanctions every discriminatory feature that a State may incorporate into its three-tiered scheme.... [E]ach variation must be judged based on its own features.

*Tenn. Wine,* 139 S.Ct. at 2471-72. So has this Circuit:

> [A] law is not immune simply because it is part of a three-tier system. In *Granholm*, New York and Michigan "argue[d] that any decision invalidating their direct shipment laws would call into question the constitutionality of the three-tier system." But the Supreme Court disagreed, noting that, although three-tier systems are "unquestionably legitimate," those systems are not valid when they "involve straightforward attempts to discriminate." [A] state's alcoholic-beverages law is not automatically valid simply because it addresses a portion of a three-tier system.

*Byrd v. Tenn. Wine & Spirits Retailers Ass'n,* 883 F.3d at 620.

---

[2] Defendants also cite two District Court decisions from other circuits that are not precedential.

The argument is irrelevant in any event because Ohio does not have a three-tier system for wine no matter how many times Defendants insist that it does -- without ever citing a statute.[3] In fact, wine is not required to pass through an Ohio wholesaler and retailer. Both in-state and out-of-state wine producers may sell directly to consumers. OHIO REV. CODE §§ 4303.232, 4303.233. Ohio might once have had a three-tier system for wine, but it repealed it fifteen years ago.[4]

**C. Replies to other arguments by Defendants**

1. Defendants argue that physical presence requirements have been upheld by some circuit courts. Def. Opp. at 2 (PageID 4966). Even if this were accurate, it would be irrelevant because the Supreme Court holds to the contrary. An "in-state presence requirement runs contrary to our admonition that States cannot require an out-of-state firm 'to become a resident in order to compete on equal terms,'" and violates the Commerce Clause. *Granholm v. Heald,* 544 U.S. at 475.

2. Defendants argue that there is no discrimination because out-of-state and in-state retailers are not similarly situated because they are located in different states and subject to different regulatory environments. Def. Opp. at 6-7 (PageID 5000-01). The argument is not supported by any authority. Similar does not mean identical, it means "analogous, comparable, or resembling the other." *U.S. ex rel. Holloway v. Heartland Hospice, Inc.,* 960 F.3d 836, 850 n.11 (6th Cir. 2020). Two wine retailers on either side of a state line are analogous, comparable and resemble each other. It is inconceivable that a resident of Cincinnati would not shop for wine at DEP's Fine Wine in Kentucky because they did not realize it was similar to The Wine Cellar in Ohio less than two miles away. The argument contradicts Supreme Court precedent that retailers offering the same kinds of products are similarly situated. *Best & Co. v. Maxwell,* 311 U.S. 454, 456 (1940); *Gen. Motors v. Tracy*, 519 U.S.

---

[3] They cite language from *Lebamoff* that Michigan has a three-tier system, but this is not Michigan.

[4] Ohio first approved direct sales from wineries in 2007. Oh. Rev. Code 4303.232 (2007) (H.B. 119).

5

278, 299 (1997). It contradicts *Granholm v. Heald* and *Cherry Hill Vineyards v. Lilly* which considered out-of-state and in-state wineries similarly situated although they were located in different states and subject to different local laws. Every out-of-state business challenging a discriminatory state law is located in a different state and is subject to different local laws, so if Defendants' argument were valid, no dormant Commerce Clause case could ever succeed.

3. Defendants also argue that plenty of wine is available in Ohio, some can be special ordered, and some is generally hard to get for reasons that are not Ohio's fault. Def. Opp. at 11 (PageID 5005). If Defendants are arguing that the discriminatory effect of the ban is small, the argument is irrelevant. Discrimination is unconstitutional regardless of the magnitude and "[t]here is no '*de minimis'* defense." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 581 n.15 (1997). Even if every wine were available in Ohio, shielding in-state retailers from interstate competition would still violate the Commerce Clause. *West Lynn Creamery v. Healy*, 512 U.S. 186, 205 (1994). The argument that it is not Ohio's fault is frivolous. Every wine discussed in Plaintiffs' evidence is available from an out-of-state retailer and the only reason a consumer cannot get them is because of Ohio's direct shipping ban. See Tanford Decl. (ECF No. 52-8, PageID 3808 et seq). The Commerce Clause guarantees a consumer access to the markets of other states for exactly these reasons. *Granholm v. Heald*, 544 U.S. at 473.

## D. Replies to arguments about evidence

### 1. The burden is on the State, not Plaintiffs

Defendants assert without any authority that Plaintiffs bear the burden of proving that the law does not advance public health and safety. Def. Opp. at 7 (PageID 5001). This is incorrect. *See Granholm v. Heald*, 544 U.S. at 492-93 (the "burden is on the State to show that 'the discrimination is demonstrably justified'"); *Tenn. Wine,* 139 S.Ct. at 2474 (the State must present concrete evidence showing that the law promotes public health or safety); *Heald v. Engler,* 342 F.3d at 526 ("the state

6

bears the burden of justifying a discriminatory statute, and 'the standards for such justification are high'"); *Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 883 F.3d at 626 (defense has burden to show nondiscriminatory alternatives would not work); *Cherry Hill Vineyards LLC v. Lilly*, 553 F.3d at 434 (once plaintiffs prove discrimination, burden shifts to defendants to present evidence to justify it).

Thus, Defendants' argument that our evidence is inadequate to conclusively prove that direct shipping does not cause problems is simply irrelevant. Def. Opp. at 13-14 (PageID 5007-08). It is not Plaintiffs' burden. This is summary judgment, and we have asserted that there is no material dispute about the fact that states which allow direct shipping have ***not*** experienced an increase in the problems predicted by Defendants. Plaintiffs have supported that assertion with evidence from officials in those states and federal data as required by FED. R. CIV. P. 56(c)(1). The burden then shifts to Defendants to present contrary evidence. It is a put-up or shut-up moment for the opponent who must produce admissible contrary evidence, not just nit-pick our evidence. *Phelps v. Dunn*, 965 F.2d 93, 97 (6th Cir. 1992). Defendants have not done so. They have presented no evidence from state officials that direct shipping is causing problems and no data that direct wine shipping increases consumption.

**2. Plaintiffs' exhibits have been authenticated**

Defendant Yost mistakenly claims that no declaration was submitted to authenticate Plaintiffs' exhibits, so none is admissible. Def. Opp. at 10 (PageID 5004). He apparently is confused by the fact that there were declarations submitted by two individuals with similar names. The declaration that authenticates the exhibits is from James A. Tanford (ECF No. 52-1, PageID 1268). The declaration cited by Defendant as not containing any authentication is from a witness, James Guthrie Tanford, concerning the availability of wine in Ohio and online. (ECF No. 52-8, Page ID 3808). In any event, most of the exhibits objected to by Defendant are government publications, which are self-authenticating under FED.R.EVID. 902(5) and not hearsay under Rule 803(8).

7

**3. Plaintiffs' summary charts are admissible under Rule 1006**

Defendant Yost objects to several charts prepared by Plaintiffs and submitted to summarize voluminous data on the public health effects of alcohol consumption. They are found at ECF No. 52-20 (PageID 3866), ECF 52-21 (PageID 3873), ECF No 52-22 (PageID 3881, 3884), ECF 52-23 (PageID 3885), ECF No. 52-26, PageID 3938-40), ECF No. 52-27 (PageID 3943). The sources of the data are included with the exhibits and citations to the federal websites with the full data are provided, so the charts are admissible summaries under FED.R.EVID. 1006.

**4. Arguments about imperfections in Plaintiffs' evidence go to weight, not admissibility**

Defendant Yost argues that some of Plaintiffs' evidence is outdated, lacks details, or is incomplete. Def. Opp. at 13-18 (PageID 5007-12). Such weaknesses, if they exist, are matters for cross-examination and go to the weight of evidence, not its admissibility. *U.S. v. Weinstock,* 153 F.3d 272, 276 (6th Cir. 1998).

Defendant Yost particularly focuses on Plaintiffs' inclusion of Nevada and Idaho among states that allow direct shipping, arguing that those states no longer permit it. Even if Defendant's characterization of these laws were accurate,[5] it would be irrelevant. Plaintiffs' evidence concerns whether any adverse effects occurred during the time when a state allowed direct shipping, not whether it currently allows it. That is why Nevada and Idaho are included regardless of whether they changed their laws in 2021, but Connecticut is not included because it did not begin allowing direct shipping until 2019.

---

[5] The Nevada bill cited as supposedly prohibiting direct shipping does not appear to repeal NEV. REV. STAT. § 369.490, which authorized it, and Defendants point to no language in SB307 that does so. The Idaho "authority" is not a bill repealing its law, but an answer to a question posted on the Liquor Dept. website, which is may or may not have the force of law. The current status of direct shipping in Nevada and Idaho is unclear.

8

**E. Reply concerning remedy**

The appropriate remedy is obvious. If the bans on direct shipping and personal transportation of wine are unconstitutional, the Defendant should be enjoined from enforcing them. Doing so would have only minimal impact on the State because it affects only shipments and transportation of wine, not beer and spirits, and leaves other regulations in place, *i.e.,* the requirement that taxes be paid, OHIO REV. CODE § 4301.43, reports be submitted, *id*. § 4303.22(B)(1); purchases be limited to 24 cases per year, *id.* § 4303.233, and the age of the recipient be verified. *Id*. 4303.232(C)(2).

Defendants suggest a far more disruptive remedy going well beyond the boundaries of this case, urging the Court to shut down Ohio's online market altogether and take away direct shipping rights from hundreds of in-state retailers. This "remedy" would violate Ohio's own severance statute that says the ***invalid*** portion of the Code should be struck and the rest left intact. OHIO REV. CODE § 1.50. Defendants proposed remedy leaves the invalid provision in place and strikes down a different part of the Code authorizing shipping by in-state retailers. Def. Opp. at 20 (PageID 5014).

Defendants have no authority other than yet another citation to *Lebamoff* -- this time to *dictum*.[6] The cases hold to the contrary: (1) The unconstitutional provision should be struck, not a different one. *Cherry Hill Vineyards v. Lilly,* 553 F.3d at 435; *Califano v. Westcott,* 443 U.S. 76, 89–90 (1979); *Nguyen v. I.N.S.*, 533 U.S. 53, 96 (2001) (Scalia, J., concurring). (2) In-state retailers are not parties to this litigation. To take away online sales and shipping rights granted to them by the legislature without giving them an opportunity to be heard would violate their Due Process rights. *See Gardner v. Evans*, 811 F.3d 843, 847 (6th Cir. 2018). (3) It would not provide any relief to the consumer Plaintiffs -- it would make them worse off. A remedy for a constitutional violation must be remedial in nature, not punitive. *Missouri v. Jenkins*. 515 U.S. 70, 88 (1995). (4) It would not

---

[6] Because the panel upheld Michigan's law, its musing on what remedy it might have ordered if it had struck down the law is *dictum* at best.

9

vindicate the Commerce Clause. This is not an Equal Protection case where the Constitution only guarantees equal treatment. This is a Commerce Clause case where the Constitution guarantees consumers access to the national marketplace. *H.P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525, 539 (1949). The scope of an injunction should be consistent with the underlying constitutional principles involved. *Missouri v. Jenkins*, 515 U.S. at 88.

The remedy suggested by Defendants also is inconsistent with legislative intent and recent actions. Ohio has been steadily expanding the ways in which consumers can obtain alcoholic beverages. See, e.g., OHIO REV. CODE §4303.185 (home delivery of cocktails), §4303.21(B) (unsupervised hotel room min-bars), §4303.022 (breweries may sell directly to consumers), §§4303.232-233 (direct shipping by wineries), §4303.234 (direct shipping by wine fulfillment warehouse), 4303.041 (craft distiller may sell directly to consumers), §4303.207 (liquor sales at golf courses). There is no evidence they would prefer to shut down a major part of the distribution process to the detriment of Ohio consumers in order to protect Ohio retailers and wholesalers from competition.

**F. Conclusion**

Ohio's ban on direct shipping and personal transportation of wine purchased from out-of-state retailers should be declared unconstitutional and the defendants enjoined from enforcing them.

Respectfully submitted
*Attorneys for plaintiffs*

s/ James A Tanford
James A. Tanford
Robert D. Epstein
Joseph Beutel
**Epstein Cohen Seif & Porter LLP**
50 S. Meridian St., Ste 505
Indianapolis IN 46204
Tel: 317-639-1326
Fax: 317-638-9891
tanford@indiana.edu

Nelson E. Genshaft
**Strip Hoppers Leithart**
   **McGrath & Terlecky LPA**
575 S. Third St.
Columbus OH 43215
neg@columbuslawyer.net
(614) 228-6345

10

Rdepstein@aol.com
joe@beutellaw.com

**Certificate of Service**

I certify that the foregoing document was filed electronically on May 6, 2022, using the court's EF/CMS system. All parties are registered users and will receive notice through the system.

s/ James A. Tanford
James A Tanford